**Claiborne Joseph LANDRY, James Joseph Landry, and Michael J. Dupre**

v.

**EXXON PIPELINE COMPANY, Mendoza Marine, Inc., Shell Western E & P, Inc., Panaco, Inc., and Louisiana Department of Transportation and Development.**

No. 99–1084.

United States Bankruptcy Court, M.D. Louisiana.

March 28, 2001.

William W. Goodell, Jr., Lafayette, LA, for Claiborne Joseph Landry, James Joseph Landry, and Michael E. Dupre.

Henry D.H. Olinde, Jr., Baton Rouge, LA, for Claiborne Joseph Landry.

Patricia E. Weeks, New Orleans, LA, for Exxon Pipeline and Shell Western.

Charles Roward Talley, New Orleans, LA, for Northfield Insurance Company.

## REASONS FOR ORDER REMANDING CASE TO STATE COURT

LOUIS M. PHILLIPS, Bankruptcy Judge.

Before the Court is Defendants' Motion to Transfer this matter to the Bankruptcy Court for the Northern District of Texas, and Plaintiffs' Motion to Remand this matter to the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana ("State Court"). For the following reasons, the Court grants Plaintiffs' Motion to Remand, therefore, the Defendant's Motion to Transfer is moot.

## I. BACKGROUND

On August 21, 1998, Plaintiffs, Claiborne Joseph Landry, James Joseph Landry, and Michael J. Dupre (collectively, "Plaintiffs") filed suit in State Court against National Energy Group, Inc. ("NEG" or "Debtor"), Exxon Pipeline Company ("Exxon"), Mendoza Marine, Inc. ("Mendoza"), Shell Western E & P, Inc. ("Shell"), Panaco, Inc. ("Panaco"), and the Louisiana Department of Transportation and Development ("LDOTD") (collectively, "Defendants"), generally alleging entitlement, under Louisiana law, to damages from the Defendants as a result of contamination of the Plaintiffs' land.[1] The basis for dam-

---

1. *"Claiborne Joseph Landry, et al. v. Exxon* *Pipeline Co., et al.,"* No. 50,991, 18th JDC.

ages, as alleged by the Plaintiffs, is that a pipeline, either owned and/or operated by the Defendants, leaked contaminants onto the Plaintiff's property requiring an environmental cleanup of that property.

On September 23, 1998, Panaco, with the consent of Exxon, Shell, and NEG, removed this lawsuit to the United States District Court for the Middle District of Louisiana ("District Court") alleging fraudulent joinder of Mendoza[2] and LDOTD, thereby premising jurisdiction upon diversity. The District Court subsequently remanded the matter to State Court on November 25, 1998.

On December 4, 1998, an involuntary Chapter 11 proceeding was commenced against NEG in the United States Bankruptcy Court for the Northern District of Texas.[3] Plaintiffs then moved to dismiss NEG from the lawsuit on December 23, 1998.[4] On January 11, 1999 the State Court granted Plaintiffs' Motion to Dismiss NEG.

On January 15, 1999, apparently unaware that Plaintiffs had dismissed NEG from the suit, Shell and Exxon, with the consent of Panaco, again filed a Notice of Removal with the District Court. Defendants asserted that the bankruptcy case involving NEG provided a basis for federal jurisdiction under, at the least, the "related to" prong of 28 U.S.C. 1334(b).[5] The Defendants subsequently moved to voluntarily dismiss the removal, which was

treated by the District Court as a Motion to Remand. The District Court again remanded the matter to State Court on April 23, 1999.

Thereafter, Plaintiffs moved in the State Court to add, as defendants, NEG's insurers, Northfield Insurance Company, Westchester Fire Insurance Company, Lexington Insurance Company, and Commercial Underwriters Insurance Company (collectively, "Insurers") pursuant to the Louisiana Direct Action Statute.[6] Plaintiffs sought to recover against certain comprehensive general liability ("CGL") insurance policies issued by the Insurers to NEG. On July 21, 1999, the State Court granted Plaintiffs' motion to amend their petition to add the Insurers.

On August 9, 1999, Shell and Exxon, joined by Panaco and the Insurers,[7] again removed the lawsuit to the District Court under 28 U.S.C. § 1452. The Defendants again premised jurisdiction for this removal on 28 U.S.C. § 1334(b), asserting that "[t]he possible distribution of NEG's insurance proceeds are property of the bankruptcy estate and will affect the bankruptcy estate."[8] Shell and Exxon immediately filed a Motion to Transfer the matter to the United States District Court for the Northern District of Texas, the district court handling the NEG bankruptcy.

Plaintiffs subsequently filed a Motion to Remand or Abstain. Plaintiffs argue that

Parish of Iberville, State of Louisiana.

**2.** Mendoza is apparently a corporation either incorporated or domiciled in Louisiana.

**3.** *"In re National Energy Group, Inc., et al.,"* No. 398–80258–RCM–11, U.S.B.C., N.D.Tex.

**4.** Plaintiffs, however, have not filed a claim within the NEG bankruptcy case.

**5.** 28 U.S.C. § 1334(b) provides in pertinent part, "the district courts shall have original but not exclusive jurisdiction of all civil pro-

ceedings arising under title 11, or arising in or **related to** cases under title 11." (emphasis added).

**6.** La.Rev.Stat. § 22:655.

**7.** Mendoza and LDOTD have not joined in the removal of this matter.

**8.** *See,* Petition for Removal, p. 2, ¶ 6.

the addition of the Insurers does not confer jurisdiction on this Court, but that even if it does, then equity dictates either remand under 28 U.S.C. § 1452(b) or abstention under 28 U.S.C. § 1334(c). As this matter ostensibly involves jurisdiction premised upon 28 U.S.C. § 1334, the District Court referred the matter to this Court for resolution.[9]

## II. BANKRUPTCY JURISDICTION

### A. General Principals of Bankruptcy Subject Matter Jurisdiction and Removal

■ As has been oft repeated, federal courts are courts of limited jurisdiction. A specific basis for jurisdiction must be statutorily or constitutionally present for a federal court to take cognizance of a particular matter.[10] In our system of federalism, state courts, which are generally courts of general jurisdiction except where Congress has statutorily posited exclusive original jurisdiction within the federal courts,[11] may hear and determine controversies which either arise under, or are affected by, federal laws. In certain situations, though, Congress has chosen to allow a party[ies] to the action to "remove" the proceeding from the state court to the federal court for adjudication.[12] Federal court removal jurisdiction, however, is to be strictly construed.[13]

In this case, the removing parties, Shell and Exxon, based removal on 28 U.S.C. § 1452, which allows for removal of civil actions if the district court has jurisdiction under 28 U.S.C. § 1334, i.e., the bankruptcy jurisdiction statute. Specifically, 28 U.S.C. § 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

■ As 28 U.S.C. § 1452(a) enables a removal of an action only if a federal court has jurisdiction under 28 U.S.C. § 1334, the first task for this Court, then, is to determine whether it has jurisdiction under 28 U.S.C. § 1334.[14] 28 U.S.C. § 1334, in turn, provides in pertinent part:

---

9. *See,* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."). Accordingly, the district court has directed that all cases within the Middle District of Louisiana under or arising under title 11, or arising in or related to cases under title 11 are to be referred to the United States Bankruptcy Court for the Middle District of Louisiana.

10. *See, Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995) ("The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute.").

11. *See, e.g.,* 28 U.S.C. § 1334(a) ("the district court shall have original *and exclusive* jurisdiction of all cases under title 11.") (emphasis added).

12. *See,* 28 U.S.C. §§ 1441–1452.

13. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988).

14. *See, Randall & Blake, Inc. v. Evans (In re Canion),* 196 F.3d 579, 584 (5th Cir.1999) ("Federal courts must be assured of their subject matter jurisdiction at all times."), *see also, Things Remembered, Inc. v. Petrarcha,* 516 U.S. 124, 131, n. 1, 116 S.Ct. 494, 499, n. 1, 133 L.Ed.2d 461 (1995) (Ginsberg, J., concurring) ("Of course, every federal court, whether trial or appellate, is obliged to notice want of subject-matter jurisdiction on its own motion.")

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

▪▪▪ Section 1334(a) and (b), thus, provide four types of matters upon which federal jurisdiction may be founded: (1) cases under title 11; (2) civil proceedings arising under title 11; (3) civil proceedings arising in cases under title 11, and; (4) civil proceedings related to cases under title 11.[15] The Fifth Circuit previously defined the phrase "all cases under title 11" as referring merely to the bankruptcy petition itself.[16] The phrase "all civil proceedings arising under title 11, or arising in or related to cases under title 11," however, was meant to identify, collectively, a broad range of matters subject to the bankruptcy jurisdiction.[17] The Fifth Circuit has interpreted the phrase "Arising under title 11" to delineate those proceedings that involve a cause of action created or determined by a statutory provision of title 11,[18] while the phrase "arising in . . .

cases under title 11" refers to administrative matters that arise only in bankruptcy cases.[19]

The phrase "related to," however, refers to a much broader category of proceedings. The United States Supreme Court, wading into the mire of "related to" jurisdiction, has noted:

Congress did not delineate the scope of "related to" jurisdiction, but its choice of words suggests a grant of some breadth. The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction.[20]

Delving further, the United States Supreme Court has expressed agreement with the Third Circuit's[21] view that:

Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate, and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.[22]

---

15. *Canion,* 196 F.3d at 584; *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 92 (5th Cir.1987).

16. *Wood,* 825 F.2d at 92.

17. *Id.* Additionally, this broad grant of jurisdictional authority stems from a desire by Congress to avoid piecemeal adjudication of matters affecting the administration of bankruptcies and is intended to give federal courts the power to adjudicate all matters having an effect on a bankruptcy case. However, the district courts, and by extension, the bankruptcy courts, are granted broad discretion to abstain, "whenever appropriate in the interest of justice, or in the interest of comity with

State courts or respect for State law." *Id.* at 93; 28 U.S.C. § 1334(c)(1).

18. *Id.* at 96.

19. *Id.*

20. *Edwards,* 514 U.S. at 307–308, 115 S.Ct. at 1498–1499 (footnote omitted).

21. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984).

22. *Edwards,* 514 U.S. at 308, 115 S.Ct. at 1499 (citations omitted), quoting *Pacor,* 743 F.2d at 994.

However, the *Edwards* Court cautioned that "related to" jurisdiction is not limitless.[23] As has been described by the Fifth Circuit, the phrase, "related to," is a term of art with a meaning less broad than that ordinarily given to the phrase, *i.e.*, "having some connection with." [24] For purposes of bankruptcy jurisdiction, the phrase "related to" has a causal component.[25] For bankruptcy jurisdiction to attach, the proceeding must be capable of causing an effect on a bankruptcy estate.[26]

To strike a balance between the broad grant of jurisdictional authority and the inherent limits vested in bankruptcy courts, the Fifth Circuit, following the lead of the Third Circuit's *Pacor* decision, has stated that a proceeding is "related to" a bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." [27] The Fifth Circuit further stated:

[a]n action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankruptcy estate. This test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must *both* (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.[28]

Conversely, this Court has no jurisdiction over proceedings that have no effect on the debtor or its estate.[29]

The Fifth Circuit has further stated that the effect on the estate and the debtor's rights need not be proven with certainty.[30] It is sufficient, for jurisdictional purposes, that the outcome of the suit or proceeding could conceivably have an effect on the debtor or the estate.[31]

23. *Id.*

24. *See, Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir.1999).

25. *Id.*

26. *Id.*, 171 F.3d at 1022–1023.

27. *Id.* 171 F.3d at 1022, quoting *Walker v. Cadle Co., (In re Walker)*, 51 F.3d 562, 569 (5th Cir.1995).

28. *Id.* (footnote and internal quotations omitted) (emphasis added). Semantically, this Court takes issue with the phrasing of the last clause of the sentence wherein the *Bass* Court states, "(1) alter the rights, obligations, *and* choices of action of the debtor," (emphasis added) thus, implying a conjunctive requirement of all three forms of alteration to be present. However, it is apparent that the *Bass* Court's formulation derives from a quote from *Walker*, set forth one sentence previously in the *Bass* opinion, wherein the *Walker* court stated, "... if the outcome could alter the debtor's rights, liabilities, options, *or* freedom of action ..." *Walker*, 51 F.3d at 569 (emphasis added). From the *Walker* quote it is apparent that the requirement of alteration is functionally disjunctive, and therefore, the jurisdictional prerequisite is present if the proceeding either affects the debtor's rights *or* obligations *or* choices of action (and has an effect on the administration of the estate). This Court believes this is the spirit of the formulation set forth in *Bass*.

29. *Edwards*, 514 U.S. at 308, n. 6, 115 S.Ct. at 1499, n. 6.

30. *See, Canion*, 196 F.3d at 587.

31. *Id.; see also, Wood*, 825 F.2d at 94 ("Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no conceivable effect"); *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 330 (8th Cir.1988) ("even a proceeding which portends a mere contingent to tangential effect on a debtor's estate meets the broad jurisdictional test [for 'related to' jurisdiction].").

It must be noted that the references in 28 U.S.C. § 1334 to "under," "arising under," "arising in," and "related to" operate disjunctively to define the scope of federal court jurisdiction.[32] Therefore, only one premise need be present for jurisdiction to attach. As the phrase "related to cases under title 11" is the broadest of the specified categories in 28 U.S.C. § 1334, this Court need only determine whether the removed State Court proceeding is at least "related to" the NEG bankruptcy to determine whether federal jurisdiction attaches. This Court, therefore, must examine whether the facts alleged in the removal petition indicate that the outcome of the State Court lawsuit has the potential to affect the debtor's rights, obligations, or freedom of action, and could affect the administration of the NEG bankruptcy estate.[33]

### B. The State Court Suit is "Related To" the NEG Bankruptcy

■ As stated previously, the Defendant's main basis for federal jurisdiction is that the addition of the Insurers to the State Court proceeding will affect the NEG bankruptcy case.

Essentially, the Plaintiffs have a "claim," as that term is defined by the Bankruptcy Code,[34] against NEG. Recall that the core allegation against NEG originally was that NEG in some way damaged the Plaintiffs and, as a result, NEG is liable for payment of those damages. In essence, the underlying allegations in the State Court lawsuit, if proven, establish a right to payment on behalf of the Plaintiffs against NEG (and others). If NEG was a party to the State Court lawsuit, the inquiry would end at this point. Obviously, if the liability of NEG could be established, the action would have the effect of increasing the liabilities or obligations of the Debtor and increasing the total claims which must be administered by the estate. A finding of no liability would have the converse effect.

In the present posture of the suit, however, NEG is not a direct party to the action brought by plaintiffs. The substantive law of the state of Louisiana law grants persons a right of direct action against the insurers of an alleged tort feasor, without the necessity of first bringing an action against the insured or even making the insured a party to the law-

---

**32.** See, Wood, 825 F.2d at 93 ("These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."); see also, Canion, 196 F.3d at 584. Although the statement in Wood, and later picked up by future Fifth Circuit panels, uses the word "conjunctively," the meaning of the sentence is that the operation of 28 U.S.C. § 1334(b) is disjunctive, i.e., offering an either/or possibility. 28 U.S.C. § 1334(b) states, "the district courts shall have . . . jurisdiction of all civil proceedings arising under title 11, *or* arising in *or* related to cases under title 11." (emphasis added). Instead of requiring that a particular matter have the characteristics of all three categories, i.e., use of the word "and," and therefore, a conjunctive requirement, the statute requires that only one of the categories be

present by the use of the word "or," a disjunctive requirement.

**33.** A determination of whether subject matter jurisdiction exists is made on the basis of the facts and circumstances of the case as they existed at the time of the removal from the State Court. See, Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir.1985).

**34.** Any and all references to the "Bankruptcy Code" are to 11 U.S.C. § 101, *et seq. See*, 11 U.S.C. § 101(5)(A):

"claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

suit.[35] Though NEG was originally made a defendant, plaintiffs voluntarily dismissed NEG from the State Court action, electing instead to pursue the Insurers directly under the Louisiana direct action statute.[36]

However, the Plaintiffs still retain, at least conceptually, a right to payment from NEG, and will until the suit is determined and either dismissed as against the NEG Insurers or the Insurers are cast in judgment and pay (the prospect of consensual resolution is, of course, possible). Merely because Plaintiffs have decided not to pursue that right in the State Court does not mean that the right itself evaporated. The right to pursue payment from NEG within the confines of the NEG bankruptcy via the filing of a proof of claim is not inconsistent, again, conceptually, with the direct action. The Court stresses that the right to payment against NEG is conceptual in nature. The Court has no evidence that there is insufficient coverage under the insurance policies issued by the insurer Defendants to provide payment of Plaintiffs' demands, should Plaintiffs prevail. Also, the Court has no evidence that there are claims against the insurer Defendants which exceed the policy limits of the relevant policies. The Court finds, therefore, as a matter of fact that any claim of Plaintiffs that is ultimately recognized will be covered by insurance and, further, that no other creditor of NEG will be deprived of a viable claim against an insurer should Plaintiffs' claim be liquidated.[37]

Effectively, however, recovery against the Insurers causes a dollar for dollar reduction of any obligation on the part of NEG to repair any damage suffered by the Plaintiffs. In turn, the *value* of the remaining claims against the assets of NEG increases by the amount of the diminished liability of NEG. Recovery against the Insurers lessens the sum total of claims for which the estate is or may be liable, while at the same time potentially increases the *pro rata* recovery of creditors that are situated, as a matter of priority, the same as the Plaintiffs' claims (or that are situated in a position of lesser priority), but are not afforded by applicable non-bankruptcy law the right to liability insurance coverage. Thus, the payment by the Insurers could affect distribution within, and administration of, the NEG bankruptcy case.[38]

The State Court action is, therefore, at least "related to" the NEG bankruptcy because the outcome of the State Court

---

**35.** La.Rev.Stat. § 22:655.

**36.** La.Rev.Stat. § 22:655(B)(1) provides in pertinent part:

> (1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy .... However, such action may be brought against the insurer alone only when:
> (a) the insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction.

**37.** Also, as will be shown, *infra*, n. 39, the non-insurer Defendants assert a potential contribution claim against the NEG. The Court finds no reason to conclude that these claims, if any, would be covered by insurance.

**38.** Though there could be an effect, the Court shows below that the effect is not the one widely heralded as the ground of analysis of jurisdiction, that of having to consider proceeds property of the estate, of protecting "these valuable remaining assets" of the estate, etc. The effect is, simply, that liability insurance provides an additional fund with which to pay certain creditors, freeing up the actual bankruptcy estate to the extent there are liability insurance proceeds.

lawsuit could conceivably affect NEG's obligations and the administration of the NEG estate.[39] Therefore, the jurisdictional requirement for removal under 28 U.S.C. § 1452(a) is present.

**39.** *Accord, Coar v. National Union Fire Ins. Co.*, 19 F.3d 247 (5th Cir.1994). At oral argument, and in some of the Defendants' memoranda, the Defendants raise the possibility that claims for contribution and/or indemnity from the Debtor, brought by third party complaint, may provide a basis for bankruptcy jurisdiction under 28 U.S.C. § 1334, as regards the principal demand of plaintiffs against the co-defendant. The Court is unpersuaded that this claim provides a basis for jurisdiction over the principal demand, which compels denial of the remand. In this instance, Defendants' claims for contribution/indemnity do not "arise under title 11," because the claim is not created or controlled by the Bankruptcy Code. Instead, the contribution/indemnity claim arises by operation of state law. *See, e.g.,* La. Civ.Code art. 1804. In fact, the Bankruptcy Code is clear that an unliquidated claim for contribution or indemnity does not generate an allowable claim. *See* § 502(e). The contribution or indemnity claim cannot be allowed until the claim arises, that is, until the amount forming the basis for the claim has been paid by the contribution claimant (in other words, the NEG portion would have to have been paid by a Defendant to generate an allowable claim on behalf of the defendant/third party plaintiff). This is an exception to the general proposition that claims can be allowed though they be unmatured, unliquidated, or contingent. Allowance of the contribution claim would involve a proceeding "arising ... in a case under title 11" since the statutory mechanism for and process for allowance only arises within the bankruptcy case, *see* 11 U.S.C. § 501, 502(e); *Fed. R. Bankr.P. 3001* et seq. However, there is clearly, under the Bankruptcy Code, no reason to invoke an allowance proceeding to consider the Defendants' contribution claims because they are not, as a matter of law, allowable in a bankruptcy case under § 502(e). This suit does not present the usual proceeding involving a claim against an estate and a corresponding

### C. The "Exclusivity" of Federal Jurisdiction Over Property of the Estate

While the Court finds that jurisdiction sufficient to support the removal of this claim against guarantors or indemnitors for losses due to the inability of the estate to pay the claim. The Court is presented with a direct action against insurers, and against other alleged obligors, each of whom could owe the whole of the claim, directly or as a solidary obligor, with the others. The debtor is not a party. There is no right of contribution—yet.

Moreover, assuming that the Defendants (or some of them) are cast in judgment, and could, after payment, establish a claim for contribution or indemnity against NEG, what effectively would happen is that one creditor would be substituted for another creditor who chose to pursue the Defendant instead of the debtor and to leave the pursuing of the debtor to the Defendant. The amount of any liability of the debtor would remain the same. The only possible effect on the estate is that any moneys disbursed by the estate are directed at a different creditor from the Plaintiffs to whom the debt would be owed in the first instance. Such a situation, however, does not have the effect of changing NEG's total liability or obligations. NEG would be obligated to pay the amount adjudged regardless of whether Defendants paid NEG's share or not. The adjudication of the principal demand and the contribution or indemnity claim, in favor of the claimants, assumes this conclusion. The only difference is to whom NEG would be liable. Finally, as the Court will show in more depth, the contribution ground for jurisdiction and denial of remand is specious because **THERE IS INSURANCE.** The most likely scenario, if Plaintiffs are successful, is that they will collect their claim from the insurer Defendants who will then pursue the OTHER Defendants for THEIR share. So, either the contribution claim will run in favor or the insurers or the non-insurer Defendants will assert a contribution claim against the insurer. Either way, practically speaking, the debtor is out of the picture.

matter is present, the Court wishes to clarify the jurisdictional basis, before turning to the issues presented by the Motion to Remand, to clarify the precise jurisdictional foundation upon which this removal lies, so as to better explicate the ground of remand. As the Court has noted, 28 U.S.C. § 1334 provides federal jurisdiction in cases "under title 11," in proceedings "arising under title 11," "arising in ... cases under title 11," and "related to ... cases under title 11."[40] Recall, the phrase "cases.. under title 11" refers only to the case initiated by the petition itself and that § 1334(a) confers exclusive jurisdiction on the federal courts over the case itself. For proceedings, either "arising under title 11," "arising in ... cases under title 11," or "related to ... cases under title 11," § 1334(b) confers original, *but not exclusive* jurisdiction to the federal courts.

The distinction between exclusive and mutual jurisdiction is important. If the matter is one over which the federal courts have exclusive jurisdiction, remand would effectively act as a dismissal of the suit. The Plaintiffs could not proceed in a court without jurisdiction, and this Court would, through remand, effectively eliminate any ability the Plaintiffs have to seek redress for their alleged damages in the court which has jurisdiction. As will be discussed *infra*, 28 U.S.C. § 1452(b) provides a broad equitable standard for remand in cases removed on the basis of bankruptcy jurisdiction. However, a matter in which exclusive jurisdiction is posited within the federal courts eliminates any equitable rationale for remand. The action cannot proceed in a state court, and therefore, must advance in the federal court.

As this matter does not involve the filing of a petition in bankruptcy, it does not fall within the exclusive province of federal jurisdiction under 28 U.S.C. § 1334(a) as being a case "under title 11." Whereas, the finding of this Court that the matter is "related to" a case under title 11, *i.e.*, the NEG bankruptcy, denotes that this Court may take cognizance of the action, but also that the action may also have proceeded with equal dignity in the State Court had the matter not been removed to this Court.

Beside the grants of jurisdiction contained in 28 U.S.C. §§ 1334(a) and (b), 28 U.S.C. § 1334 contains another grant of jurisdiction to the federal courts—jurisdiction over property of the debtor and of the estate.[41] 28 U.S.C. 1334(e) provides:

> The district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction* of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.[42]

While at first blush it might appear that if an action involves property of the estate, a federal forum, and more specifically, the district court handling the bankruptcy case involving the estate to which such property belongs, is the only proper forum for adjudication of claims to such property, 28 U.S.C. § 1334(e) more properly denotes a grant by Congress of *in rem* jurisdiction over property of the debtor as of the commencement of the case and over property of the estate. Section 1334(e) must be harmonized with the provisions of § 1334(b) granting non-exclusive jurisdiction over matters "arising under," "arising in," and "related to" bankruptcy and/or bankruptcies. An action, *in personam*, that seeks to establish personal liability of the debtor on a claim, but which is not specifically targeted to ownership of,

**40.** 28 U.S.C. 1334(a),(b).

**41.** 28 U.S.C. § 1334(e).

**42.** (Emphasis added)

or rights in and to, property of the estate does not fall within this subsection. The bankruptcy court, pursuant to § 1334(e), retains jurisdiction over the disposition of any property of the debtor or the estate necessary to satisfy any such claim or judgment. As explained by the Seventh Circuit in *In re United States Brass Corp.:* [43]

> A creditor might file a lien against property of the debtor in a court in State A, and shortly afterward the debtor might declare bankruptcy in State B. Control over the debtor's property would be shared by the court in A and the bankruptcy court in B—it might even be the same piece of property, and more than two states might be involved. Section 1334(d) gives the bankruptcy court control of all the property. Creditors who want to enforce their liens have to do so in that court regardless of the location of the creditor or the property. This is the entire meaning of the statute and it has no application to a dispute between the debtor and its insurers over the scope of coverage. [44]

Thus, an *in personam* suit against a debtor, which has as its ultimate end the satisfaction of a claim from property of the debtor or the estate, may proceed in a forum other than the bankruptcy court, assuming that the automatic stay [45] has been modified, without offending the exclusivity provision of § 1334(e) because the ultimate end of the suit, *i.e.,* satisfaction of the judgment from property of the debtor or estate, cannot be had without dispensation from the bankruptcy court which exclusively controls the property of the debtor and its estate. [46]

In this instance, the primary assertion by the Defendants is that the CGL policies issued by the Insurers are property of the estate. Therefore, it is argued, an action to recover proceeds from those policies involves an adjudication of rights in and to property of the NEG bankruptcy estate, and should be adjudicated in the Bankruptcy Court for the Northern District of Texas where the NEG bankruptcy is pending, or, at least by this court.

■ This Court offers its analysis of the proper characterization of proceeds of liability insurance, below. It suffices at this point to note that the State Court suit is not an *in rem* action by the plaintiffs to recover property of the estate. Instead, the State Court action is an *in personam* action to establish liability, and thus, a right to be paid reparations for the damages allegedly suffered. The state court suit presumes NEG ownership of the policies, presumes the validity of the policies, and presumes that if liability is established, the insurers (because of the protection of the debtor afforded by the contracts—the policies) will be liable and will pay. There is no suggestion within the state court suit, then, that a state court

---

**43.** 110 F.3d 1261 (7th Cir.1997)

**44.** *Id.,* 110 F.3d at 1268; *c.f., Slay Warehousing Co., Inc. v. Modern Boats, Inc. (In re Modern Boats, Inc.),* 775 F.2d 619 (5th Cir. 1985) (filing of bankruptcy vested *in rem* jurisdiction in bankruptcy court although claim against the property was already pending in a court of admiralty at time debtor filed bankruptcy). The reference in the quote to 28 U.S.C. § 1334(d) is appropriate. 28 U.S.C. § 1334(d) was re-designated 28 U.S.C. § 1334(e) by Pub.L. No. 103–465, § 104(b).

**45.** 11 U.S.C. § 362.

**46.** *Accord, White v. White (In re White),* 851 F.2d 170, 174 (6th Cir.1988) (bankruptcy court could lift stay to allow bankruptcy court to determine proper division of marital assets under state law subject to the bankruptcy court's " 'exclusive jurisdiction over property of the Debtor ... when the state court defines what is the property of the Debtor....' ")

would be called upon to exert control over, to define, to sort through claims of ownership of or right to the insurance policies. Also, if the State Court suit results in a finding of liability against the Insurers, the Plaintiffs would nonetheless be bound to seek a disbursal from the bankruptcy court to collect from the Insurers *if the proceeds of the policies are property of the NEG bankruptcy estate,*[47] because regardless of whether the State Court has concurrent jurisdiction with the bankruptcy court to determine issues of liability related to the NEG bankruptcy, the Bankruptcy Court for the Northern District of Texas has exclusive jurisdiction over the property necessary to satisfy the judgment. But, as it stands, the imposition of liability is separate and distinct from the satisfaction of that liability. As such, the exclusivity of federal jurisdiction over property of the estate does not extend to resolution of a claim which might, or will, have as its *telos* the distribution of property of the estate. The exclusivity extends only so far as the actual distribution, management, and control of that property is concerned. Thus, the federal jurisdiction over the State Court action does not fall within the domain of 28 U.S.C. § 1334(e), and therefore, is not exclusive.

### D. Whether the Insurance Proceeds are Property of NEG's Estate

As noted above, if Plaintiffs are successful in their action against NEG's insurers, Defendants argue that they nonetheless will be required to petition the Bankruptcy Court for the Northern District of Texas to receive authority necessary to satisfy the judgment obtained. Defendants argue

that under the exclusive grant of jurisdiction posited by 28 U.S.C. § 1334(e), if the liability insurance proceeds are property of NEG's estate, then only the Bankruptcy Court for the Northern District of Texas can authorize disbursal of the liability insurance proceeds. While not critical for the Court's present finding of jurisdiction (but which will shed light on the Court's determination to remand), the Court digresses to clarify an important distinction between what is and what is not "property of the estate" in the liability insurance context, *i.e.*, whether the liability insurance policies, or the proceeds payable from those policies, are, or would be, property of the NEG bankruptcy estate.

### 1. Property of the Estate

As an initial matter, "property of the estate" is defined and circumscribed generally by 11 U.S.C. § 541. That section provides, in pertinent part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> \* \* \* \* \* \*
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate . . . [48]

 By choosing the phrase "all legal or equitable interests of the debtor in property," Congress intended to include a broad range of property within the es-

---

**47.** As the Court will show, they are not. However, the point here is that even if the proceeds were property of the estate, the state court suit does not contravene § 1334(e), because it does not seek a judgment recognizing

ownership of proceeds—only affixing the liability of the insurers, so that, if necessary, execution of the judgment can be effected.

**48.** 11 U.S.C. § 541(a).

tate.[49] In essence, all economic rights the debtor holds at the commencement of the bankruptcy become property of the estate under 11 U.S.C. § 541.[50] "Property of the estate," however, is not limitless. The term is measured by the interests held by the debtor as of, or up to, the commencement of the case, unless otherwise provided within the statute. As stated by the Fifth Circuit, "the estate's legal and equitable interests in property rise no higher that those of the debtor."[51] The estate includes only property to which the debtor would have a right if the debtor were solvent.[52]

## 2. Insurance Policies

■ Most courts addressing whether "property of the estate" includes insurance policies have held that an insurance policy owned by the debtor is property of the estate under 11 U.S.C. § 541.[53] The Fifth Circuit, speaking on the issue, stated in *Edgeworth*, "[i]nsurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contact rights under the policy itself."[54] Continuing, the Fifth Circuit stated, "[a]ny rights the debtor has against the insurer, whether contractual or otherwise become property of the estate."[55]

While the insured's contractual and state statutory rights under the insurance policy are property of the estate, the insured's rights under the policy are not at issue in a matter such as the present one. The Plaintiffs do not want to interfere with NEG's rights under the policies. Instead, Plaintiffs wish to recover their alleged losses from the Insurers due to the Insurers contractual assumption of liability through the insurance policies. In fact, Plaintiffs' lawsuit asserts, as one of the material components of the claims against the Insurers, that the debtor owns the policies in question and is protected by the coverage(s) afforded, for all losses sustained by Plaintiffs. Regarding the Debtor's rights under the policies, the Plaintiffs and the Debtor are aligned; the policies are in effect, are owned by the Debtor, protect the debtor against losses of the kind allegedly sustained by the Plaintiffs, and will insulate the Debtor's assets should liability be established. In fact, the Plaintiffs are likewise aligned with the non-insurance Defendants, who, in truth (but have determined to hold their mouths otherwise so as to argue, vociferously, in favor of protecting the sanctity of the "debtor's" insurance proceeds), must argue alongside of, hand-in-hand with Plaintiffs that any damages were caused by the debtor and are covered by the insurance policies. The

---

**49.** *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

**50.** Note, *"What's the Matter with Zedda: Problems with the Analysis of what Constitutes an Avoidable Interest of the Debtor in Property,"* 58 La. L.Rev. 1259 (1998).

**51.** *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir.1987), quoting *In re Gagnon*, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983).

**52.** *Id.*, 832 F.2d at 1401; *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3rd Cir.1993). This Court has previously determined that

estate also includes those rights granted the trustee under 11 U.S.C. §§ 544(a)(1), (2). *See Murray v. Guillot (In re Guillot)*, 250 B.R. 570 (Bankr.M.D.La.2000).

**53.** *See, e.g., In re Davis*, 730 F.2d 176, 184 (5th Cir.1984); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993); *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 533 (5th Cir.1995).

**54.** *Edgeworth*, 993 F.2d at 55.

**55.** *Id.*

only parties who might suggest contrarily to the position of the Debtor and Plaintiffs (and non-insurance Defendants) are the Insurers themselves, on the basis of some problem or limitation extant within the contractual relationship between the Debtor and the Insurers, or some coverage limitation.[56] The Insurers have not asserted such a problem or limitation, and therefore, seem consigned to defending the Plaintiffs' action on the merits, instead of escaping by means of such a defense (and seek, only, to escape along with the other Defendants to another place, so that their non-bankruptcy, intra-Defendant battles can be fought after transplanting the Plaintiffs to bankruptcy garden where, it is hoped, they will wither and die).[57]

## 3. Proceeds of Insurance Policies— the *Edgeworth* rationale

While the rights held by a debtor under insurance policies are property of the estate, whether the funds paid by the Insurers on account of the insurance policies are property of the estate is an entirely different question. A split of authority has developed regarding whether proceeds payable from such insurance are property of the estate.[58] On one hand,

---

**56.** Clearly, each non–insured Defendant hopes that if a contribution right is established against the Debtor, in the event of liability of the other defendants to the Plaintiffs, that it can be exercised against the Insurers of the Debtor, as opposed to the Debtor itself. The alignment of these mutually exclusive interests is, well, curious.

**57.** This observation, of course, telegraphs the Court's conclusion that the prospect of the Plaintiffs' claims having an effect upon the assets or estate of the Debtor has all but evaporated.

**58.** Compare, e.g., *Edgeworth, McAteer, and Louisiana World Exposition, supra, In re Daisy Sys. Sec. Litig.,* 132 B.R. 752 (N.D.Cal. 1991), cases which hold that proceeds of insurance policies in certain contexts are not property of the estate, with *Vitek, supra., Tringali v. Hathaway Mach. Co., Inc.,* 796 F.2d 553 (1st Cir.1986) ("language, authority, and reason all indicate that proceeds of a liability insurance policy are property of the estate.")—we find no language and no reason but only "authority" which is bereft of either; *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Cos., Ltd.),* 799 F.2d 517, 519 (9th Cir.1986), *Forty–Eight Insulations, Inc. v. Lipke (In re Forty–Eight Insulations, Inc.),* 54 B.R. 905, 908 (Bankr. N.D.Ill.1985) ("insurance policies and their proceeds are property of the estate."). *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420 (Bankr.S.D.N.Y.1983) ("The insurance policies and proceeds thereof ... constitute substantial property of the Manville estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments."). The Court notes that the *Johns–Manville* assertion in reality says nothing, other than that if parties with rights to the insurance collect against the insurance there is less insurance. Of course, what the *Johns–Manville* court was angling toward was the creation of a fund, against which the claims (or, if not claims, the rights) against the debtor could be marshaled, pursuant to a confirmed plan. Therefore, the *Johns–Manville* court was probably saying something else. The *Johns–Manville* court was in effect saying (and should have gone ahead and said it) that if claimants and future claimants are able to proceed to liquidate claims for damages, punitive damages, etc. against insurers, it may be that the insurance limits would be expended upon claims, pre-judgment interest, punitive damages, expert witness fees, lawyer fees, etc.,and might therefore reduce the coverage limit so the remaining fund exposes more of the debtor's non-insurance assets than would be achievable under a plan—where certain components of damages might be, in effect, disallowed through class acceptance in return for policy coverage settlements with the estate. Or, the court could have been saying that given coverage defenses available to the insurer, allowing individual claimants to go after insurance proceeds might have the consequence of a non-bankruptcy judgment in a single personal injury action with preclusive effect establishing that intentional wrongdoing constituted an excluded act under the

cases such as *Edgeworth* and *Louisiana World Exposition* require resolution of the question by probing the debtor's interests in the proceeds. On the other, the conclusion that proceeds are property of the estate becomes the argument that proceeds are property of the estate. As the Fifth Circuit explained in *Edgeworth:*

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, *when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.*[59]

Thus, under the *Edgeworth* analysis, the type of insurance at issue is critical for determining whether insurance policy proceeds are included within the estate of the insured/debtor.

 In the liability insurance context the debtor has no cognizable claim to the proceeds paid by an insurer on account of a covered claim. The proceeds are paid to the victim of the insured's wrongful act.[60] The insured debtor cannot ask the insurance company to pay him, or determine on its own how the proceeds of the policy should be distributed, nor can any creditor of the insured seize the proceeds in satisfaction of a claim not falling within the terms of the insurance contract.[61]

As pointed out in *Edgeworth,* the proceeds could not be made available for distribution to the creditors other than those who have claims under the policies.[62] In

---

insurance policies, for which there was no coverage, and could thereby expose all of the debtor's assets to claims of asbestos claimants (present and future), with no non-estate funds to use as a basis for reorganization. Within the context of what the court was really saying, therefore, the available or possible amount of policy proceeds mattered. However, as this Court will show, the ability to marshal claims against a fund is a separate power, which has no necessary relation to the question of whether proceeds of liability policies are property of the estate, but rests rather firmly upon the power of the bankruptcy court to restructure debtor-creditor relations.

59. *Edgeworth,* 993 F.2d at 55–56 (emphasis added).

60. *Id.,* 993 F.2d at 56.

61. *See, e.g.,* 11 U.S.C. § 544(a)(1). By purchasing ordinary liability insurance coverage (exclusive of indemnity coverage), an insured pays a premium in return for the promise by the insurer to defend the insured in an action, and pay, on the insured's behalf, the amount of any claim covered by the terms and conditions of the policy. However, the payment of a premium does not grant the insured a legal or equitable right to the funds used by the

insurer to pay covered claims. Therefore, even if the Court asks whether the estate can garner a right to the proceeds of a liability policy by means of the trustee's strong arm powers under § 544(a)(1) and (2), the answer is no, because the hypothetical ideal lien creditor (whose claim would not be covered by the insurance) could get no rights in, to or upon the proceeds by execution on the ideal lien.

62. *Edgeworth,* 993 F.2d at 56. At least one case makes reference to a the fact that if proceeds were considered property of the estate, then such proceeds would be subject to the distributive priorities accorded under the Bankruptcy Code. *See, In re Sfuzzi, Inc.,* 191 B.R. 664 (Bankr.N.D.Tex.1996), *see also,* 11 U.S.C. 726 ("property of the estate shall be distributed" according to priority); 11 U.S.C. § 507, 1129. Such a situation is clearly untenable, because, by the happenstance of viable claims of certain creditors to proceeds from the insurance policies, it would effectively allow creditors with claims not covered under the insurance policies, and thus, not entitled to recover directly from the insurers under the insurance policies, to recover indirectly through a distribution of property of the estate. Although this Court ultimately agrees with the conclusion reached by the

effect, the proceeds of liability insurance policies do not become, for example, assets on a balance sheet. In fact, prior to the existence of a covered claim, it is nonsensical to talk about "proceeds of a policy," because the "proceeds" are merely a component of the asset structure of the insurance company. From this observation it is an easy step to recognition that the covered claim, which generates the (regulatory and operational) allocation of assets with which the covered claim can be paid, is from the insurance company financial perspective, just that—a claim, debt, obligation. The "proceeds" pre-estate the claim, and are nothing other than the portion of the insurance company asset base which will be used to pay the claim (which is a liability or the insurance company balance sheet). When a covered claim arises, the injured debtor may have an interest, albeit a self-serving interest, in having a third party (the insurance company) pay for its wrongdoing, but this is not a legal or equitable interest *in the property* used to pay the claim. The interest the insured debtor has is the contractual right to have its own assets protected from exposure by means of the insurance coverage, according to the terms of the contract.

The value of the asset side of an insured debtor's estate is not enriched by the existence of coverage or the payment by a liability insurer to a tort victim. The property which the debtor or estate holds, or the interests of the debtor or estate in property, remains the same; it is the underlying claim base for which the estate is liable that is affected. Because of the insurance, the estate property is liable for a smaller amount of claims (calculated by subtracting from the entirety of the claims base the amount of insurance coverage). However, to hold that the debtor has a legal or equitable interest in property used to pay the covered claims because payment of the covered claims by some other party with that party's property may decrease the debtor's overall liability, is utterly backward.

Reasoning further, the proceeds of general liability insurance (as opposed to indemnification of liability insurance) are (to a point) analogous to a third-party guarantor's funds used to pay a loan upon the default of a primary obligor. This Court believes that it is beyond question that the property of a guarantor, used by a guarantor to effect payment on a guaranteed loan (on which the debtor is principally obligated) would not be considered property of the estate of the principal obligor.[63] The

bankruptcy court in *Sfuzzi*, this Court is not of the opinion that a finding that the proceeds are property of the estate would result in distribution of such proceeds among creditors without claims covered by the particular insurance. Property of the estate comes into the estate subject to all restrictions applicable to that property under state law, unless the restriction is undone by the Bankruptcy Code. *See, Board of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924); *see also, Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979). Thus, the insurance proceeds, *if* they were considered property of the estate, necessarily would be distributed only to those to whom the state insurance law, or the policies themselves, gave a right to distribution.

63. *C.f., Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992) (automatic stay does not extend to an action against surety on supersedeas bond); *see also, Edwards v. Armstrong World Indus., Inc.,* 6 F.3d 312, 316 (5th Cir.1993), rev'd on other grounds *sub nom, Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995) ("Nevertheless, we do not believe that this definition [of property of the estate] is so broad as to include the kind of interest under consideration in the present case [payment by a surety on a supersedeas bond]."). Interestingly, both the Fourth Circuit's *Willis* case and the Fifth Circuit's *Edwards* case involved the same injunction against proceeding against sureties on supersedeas bonds posted by the debtor, Celotex Corp. The Fourth and Fifth

duty of the guarantor to pay the debt is separate and independent of the primary obligor's. The guarantor satisfies its obligation from its own assets, not those of the debtor.[64] The debtor holds no legal or equitable interest in the property of the guarantor used to satisfy the outstanding obligation of both the guarantor and the debtor. The estate merely receives the benefit of the payment by a corresponding reduction in its liability to the bank.

Of course, argument by analogy inevitably fails at some point (otherwise it would not be an analogy, but rather the identical argument). In the guarantor situation, the debtor would exchange liability to the bank for liability (for the amount of the payment) to the guarantor to the extent of the guarantor's payment, by means of contribution or indemnity. With liability insurance, the debtor is not bound to repay the insurance company in full for the insurance company's payment of the claim. So there is a difference. Nonetheless, the core concept within the analogy remains intact—the funds held by the guarantor and used to pay its obligation are the guarantor's alone. In fact, the difference between the guarantor situation and the insurer advances the argument that proceeds used to pay the liability of an insurance company under a liability insurance policy are not property of the insured's estate. The guarantor obtains a claim against the debtor arising from payment of or on the guarantee, which can often involve a transfer of the debtor's property, if the contingent obligation of the debtor to the guarantor is collateralized.

Though the contribution and indemnity claim might entail an encumbrance upon certain property of the debtor, the **payment by the guarantors** clearly **seem not** to involve property of the debtor's estate, but of the guarantor's estate. In the liability insurance situation the insurance contract itself requires that payment of the covered claim be with insurance company assets. Further, in the typical liability insurance agreement, no claim for contribution or indemnity arises upon payment by the insurance company of the covered claim. Because no claim arises there is no encumbrance of property of the debtor. The claims against the debtor, in fact, are reduced. The guarantor situation can well involve substituting of the guarantor as creditor with a claim against the assets of the debtor and the transfer of an interest in property to secure the claim. The liability insurance situation involves no substitution of a claim and no effect upon assets of the debtor other than the con-

Circuits both concluded that the surety had an independent obligation from that of the debtor, and that the debtor did not have, or no longer had, any interest in the supersedeas bonds. Therefore, enforcement against the bonds was not stayed by the automatic stay, 11 U.S.C. § 362. While, *Willis* ultimately concluded that the bankruptcy court entertaining the Celotex Corp. bankruptcy had the power to, and did, enjoin actions against the sureties on the bonds, the Fifth Circuit's *Edwards* court concluded the opposite, *i.e.*, that the bankruptcy court could not enjoin actions against sureties to recover property not considered property of the estate. It was this split that prompted the United States Supreme Court to grant certiorari in *Celotex*

*Corp. v. Edwards, supra*, and ultimately to reverse the Fifth Circuit's holding.

**64.** *See, Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586, 589 (5th Cir.1987), modified on other grounds, 835 F.2d 584 (1988) ("When the issuer honors a paper draft under a letter of credit, it does so from its own assets and not from the assets of [the debtor] who caused the letter of credit to be issued."). Whether *Compton* is entirely correct, as regards whether there is a transfer of an interest in other property of the debtor because of the encumbrance upon the debtor's property to secure an indemnity liability under the letter of credit, is not relevant to our consideration here.

tracted-for effect—the debtor's estate will not be used to pay covered claims unless and until all coverage is exhausted. By contract the debtor has bought the right to protect its estate through the contractual obligation by the insurance company of its estate.

Conversely, insurance proceeds payable to the debtor would be considered property of the estate. Certain types of insurance, such as fire, life, collision, uninsured motorist, and casualty insurance proceeds are property of the estate assuming the debtor is a beneficiary of those proceeds. In such cases, the debtor has the legal right and interest to the proceeds once the proceeds are determined to be properly payable. The estate receives a direct pecuniary benefit from the proceeds—indeed, the value of the estate is enriched by the proceeds,[65] because the proceeds are either added to an already fully formed estate (*e.g.*, life insurance), or replaces the value of components of the estate (as the rights are fixed under the policy) that have been destroyed, injured, etc., so as to make the estate whole.

While the estate is enriched in instances where equitable or legal entitlement to the proceeds belongs *only* to a third party, such as a victim of a tort under a liability policy, and not to the debtor, the estate does not, however, mathematically increase. The proceeds are called into play to the extent of the covered claim(s), or coverage limits under the policy if the claims exceed the coverage. As regards the value of the estate, the liquidation of a claim that has rights to proceeds of a liability policy is a value neutral event. The proceeds amount is determined by the size of the claim(s), and is used to satisfy the claim(s); the size of the estate is not affected. To be sure, if claims exist that are covered by the policy of liability insurance, the estate benefits from the payment of the proceeds because it is the insurance proceeds/funds that are used to pay covered claims, *as opposed to* property of the estate. Saying this, however, is nothing more than saying that liability insurance protects one's estate in the event a claim that is covered by the liability insurance exists, by generating a non-estate fund with which to pay the claim; or, more distilled, having liability insurance is a good thing if it is ever needed; or, even more distilled, liability insurance ... is liability insurance. The liability insurance proceeds protect the estate; another entity's property (the proceeds) is used to pay the estate claim. This keeps the estate's property from being used. This proposition is one of the very few conceptual

---

**65.** *See, e.g., Ford Motor Credit Co. v. Stevens,* 130 F.3d 1027 (11th Cir.1997) (proceeds of casualty insurance on covered vehicle property of the estate.); *see also,* 11 U.S.C. § 541(a)(5)(C) regarding life or death benefit insurance. 11 U.S.C. § 541(a)(5) includes as property of the estate:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>
> * * * * * *
>
> (C) as a beneficiary of a life insurance policy or of a death benefit policy.

This provision assumes that the proceeds of life or death benefit insurance policies inure to the benefit of the debtor, and therefore, if the debtor had received such prior to the commencement of the case, the proceeds of such policies would have been included within property of the estate. The specific inclusion of this provision in 11 U.S.C. § 541, however, does not mean that proceeds of insurance to which the debtor does not have entitlement would become property of the estate under 11 U.S.C. § 541(a).

propositions that, to this Court, seems self-evident and easy to grasp.

■ Property, however, does not become property of the estate merely because such property has the effect of reducing the estate's liability, or because of some other beneficial effect such property has on the estate. *The estate must have a legal or equitable interest in the property which benefits the estate.*[66]

### 4. Proceeds of Insurance Policies— the Rationale Contrary to *Edgeworth*

As noted above, a split of authority exists regarding whether the proceeds of a policy, which is itself property of the estate, should be considered property of the estate. Indeed, *Edgeworth* has been criticized by another panel of the Fifth Circuit.[67] but *Edgeworth* has not been directly refuted.[68] In *Vitek,* the panel wrote:

When a debtor corporation owns an insurance policy that covers its own liability vis-a-vis third parties, we—like almost all other courts that have considered the issue—declare or at least imply that both the policy and the proceeds of the policy are property of the debtor's bankruptcy estate.[69]

In criticizing *Edgeworth*'s position, the *Vitek* Court stated:

[*Edgeworth* ] confutes the broad understanding—recognized even in *Louisiana World Exposition*—that when a liability policy "provides coverage for judgments against or losses of the bankrupt corporation itself," the debtor owns both the policy and the proceeds of that policy.[70]

---

**66.** This Court has previously said that 11 U.S.C. § 544(a)(1) creates property of the estate, in other words, it is a capture provision expanding the scope of property of the estate outside the bounds of 11 U.S.C. § 541(a). *See, Murray v. Guillot (In re Guillot),* 250 B.R. 570 (Bankr.M.D.La.2000). *Guillot* is consistent with the statement above, because the status as holder of the hypothetical lien, though it extends beyond the debtor's pre-bankruptcy interests in property, provides *the estate* with a legal and/or equitable interest in the property subject to the ideal hypothetical lien. Therefore, the Court considers the source of "property of the estate" to be broader than only the debtor's pre-bankruptcy interests in property. Notwithstanding this, the Court cannot find a source in any statute for designating liability policy proceeds "property of the estate;" certainly the debtor cannot claim a pre-bankruptcy entitlement, and neither can the estate under the strong arm powers.

**67.** *Homsy v. Floyd (In re Vitek, Inc.),* 51 F.3d 530, 533 (5th Cir.1995).

**68.** *Sfuzzi,* 191 B.R. at 667.

**69.** *Vitek,* 51 F.3d at 535.

**70.** *Id.,* 51 F.3d at 534, n. 17. The *Louisiana World Exposition* opinion does imply that if the liability insurance is to cover the debtor's own liability, then the estate owns the proceeds of the policies. *See, Louisiana World Exposition,* 832 F.2d at 1399–1400. The Fifth Circuit stated:

The question is not who owns the policies, but who owns the liability proceeds. Although the answer to the first question quite often supplies the answer to the second, this is not always so, as we will explain. The policies in several of [the cases cited by the Court previously in the opinion] provided coverage for judgments against or losses of the bankrupt corporation itself. *E.g., In re Davis, supra; A.H. Robins, supra; In re Johns–Manville,* 40 B.R. 219, 33 B.R. 254, 26 B.R. 420. In such cases, the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability. *See, e.g., Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986) (bankrupt's liability insurance proceeds are part of the estate); *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 996 (5th Cir.1985) (any right to proceeds from debtor's fire insurance policy belonged initially to debtor); *In re Crownover,* 43 B.R. 22, 24 (Bankr.E.D.Mo.1984) (proceeds of fire insurance policy payable to debtor was property of the estate.).

Furthermore, the *Vitek* Court reasoned, following a policy/proceeds ownership dichotomy would expose a debtor's insurance policies to suit outside the ambit of the bankruptcy estate. (This is technically incorrect. Such a dichotomy exposes the insurance company to suit outside of the ambit of the bankruptcy estate, and generates the possibility that the insurance company could be compelled to pay a judgment with its own money, outside the ambit of the bankruptcy estate—the suit would not be against the policies.) As explained by Justice, then Judge, Breyer in *Tringali*,[71] liability policies and their proceeds are valuable property of the debtor, especially where claims exceed potential insurance coverage, and a holding that liability policies and their proceeds are not property of the estate could start a race to the courthouse and unfair results between potential plaintiffs.[72] Relying on

*Tringali*, the *Vitek* panel opined that "[s]uch a 'race to the courthouse' arguably offends one of the most fundamental policies underlying bankruptcy law: preservation of the debtor's estate and the status quo ante long enough to allow a fair, ratable, systematic liquidation of the estate's assets among all claimants." [73]

While the "race to the courthouse" sound-bite surely generates knowing nods of near archtypical recognition (kind of like television commercials about the overriding excellence of hair coloring products that use the power of water), it offers no analytical ground, certainly as regards the assets of the estate. Prohibiting a "race to the courthouse" only makes sense if looked at as an avenue to an ultimate result—confirmation of a plan or the marshaling of claims and assets (including third party assets due to contractual commitments) within a liquidation, pursuant to the statu-

*Id.* However, two problems are apparent and undermine the *Louisiana World Exposition* court's position on the subject. First, the *Louisiana World Exposition* court fails to recognize the distinction between proceeds payable to the debtor on account of loss, such as fire insurance, and proceeds intended to be paid elsewhere or to other parties to cover the debtor's liability. On the one hand, fire insurance proceeds payable to the debtor would be considered property of the debtor's estate because the estate has a legal or equitable entitlement to the proceeds—it is the loss payee. However, using the finding of fire insurance proceeds as property of the estate as analytical support for the proposition that liability insurance proceeds are property of the estate stretches logic to the breaking point. As discussed above, unlike fire insurance proceeds, designed to cover a loss suffered by the debtor by replacing the value of the portion of the debtor's estate that was lost, liability insurance posits no legal or equitable entitlement to the proceeds of such insurance in the hands of the debtor. The failure to distinguish between the two types of cases is fatal to the position that liability insurance is property of the estate.

Moreover, the only case cited as support directly for the proposition that liability insur-

ance proceeds are property of the estate is *Tringali v. Hathaway Mach. Co.* As will be discussed above, the *Tringali* court's whole analysis of the "property of the estate" issue is flawed by the use of a circular logic. The *Tringali* court first assumes that such proceeds are property of the estate and from there determines that they are indeed property of the estate. The *Louisiana World Exposition* court's use of this authority for its determination of settled law is, at least, suspect.

71. *See, supra.* n. 53.

72. *Tringali,* 796 F.2d at 560. The Court does not know by what moral calculus the court determines that tort claimants proceeding against an insurance company because of insurance coverage would be unfair if unfettered. Surely, such a thing happens daily within all courts, and is not seen to be unfair, but rather the expected cause of action that the insured bargained for. Throwing around such terms as "unfair" does not advance an analysis; it clearly reveals the depth of the absence of analysis.

73. *Vitek,* 51 F.3d at 535, n. 21.

tory and equitable power vested by the Bankruptcy Code and process. The "race to the courthouse" alarm, without context, is meaningless.

The analysis overlooks the premier qualification under 11 U.S.C. § 541 for property to be included within the estate: the debtor must have a legal or equitable interest in the property. To hold that property must be property of the estate because if it wasn't the debtor may be open to liability is, as noted above, back wards. The debtor or estate does not have interests in property because the use of that property will potentially benefit the debtor.

Moreover, the rationale in *Vitek* and *Tringali* assumes that proceeds are property of the estate as a justification for finding that the proceeds are, indeed, property of the estate. In crafting its circuitous rationale, the *Vitek* panel states that allowing suits outside the ambit of the bankruptcy court would offend the policy of preserving the estate and the status quo to allow a fair and ratable distribution of the estate. This "race to the courthouse" would, in the opinion of the *Vitek* panel, deplete the debtor's or estate's assets, and thus, alter the status quo. However, to reach this conclusion, the Court must have already concluded that the proceeds of the policies are property of the estate. Only by first finding that the insurance proceeds are property of the estate does the estate suffer any diminution in value by allowing suits to proceed outside bankruptcy.

The logic also founders because it would apply with equal force to a rationale supporting the other side of the proverbial coin, *i.e.*, proceeds from insurance policies cannot be property of the estate because the estate will suffer no diminution in value by allowing suits to continue outside the ambit of the bankruptcy court. To illus-

trate, if the proceeds were not property of the estate, then no diminution of the estate would occur by allowing suits to proceed outside bankruptcy because the suits seek property which is not property of the estate. A company with ten million dollars in assets but which holds ten million dollars in insurance coverage would retain ten million dollars in assets for the estate even if suits against its insurers proceeded outside bankruptcy. Either argument fails to analyze the core requirement of 11 U.S.C. § 541—the debtor's legal or equitable interests in property, *i.e.*, the insurance funds.

Preserving the *status quo* is equally unpersuasive. The *status quo* is affected only if one first finds that property is property of the estate. In that circumstance, if property of the estate is diminished outside the bankruptcy arena, then of course, the *status quo ante* bankruptcy would be affected. If property is not property of the estate, the estate is not diminished and the *status quo ante* as it affects the size of the estate is not affected. What would happen, however, is that certain creditors with claims subject to insurance coverage may have their claims satisfied from the insurance funds outside the estate, thus, decreasing the debtor's overall liability to its creditors.

Even if insurance coverage is insufficient to provide for all claims entitled to insurance proceeds, thus inviting the feared "race to the courthouse," the analysis, if done in a vacuum, does not change. If a "race to the courthouse" ensues, it is true that some claims, getting at the insurance proceeds first, might get paid all, while some get nothing. However, this has no effect on the claims balance against the estate. It matters not (as regards the balance of claims against the estate after exhaustion of the coverage) whether some claims receive 100% payout from insurance

proceeds while the remainder get nothing, or whether all claims entitled to insurance proceeds, under applicable non-bankruptcy law, share *pro rata.* The balance of claims remaining against the estate res will be the same.

To illustrate, assume a debtor holds assets with a value of one million dollars—in essence, a one million dollar "estate." Assume secondly that the debtor holds liability insurance coverage with a policy limit of one million dollars. Assume thirdly that persons holding an entitlement to proceeds from the liability policies have claims amounting, in the aggregate, to four million dollars. Now, it matters not, as regards the claims assertable against the "estate" after exhaustion of the insurance proceeds, whether the one million dollars of insurance proceeds is paid to the first one million dollars in claims that reaches those insurance proceeds, or whether the one million dollars of insurance proceeds is paid *pro rata* amongst all claimants having entitlement to the insurance proceeds. In either case, three million dollars in claims will not be paid, and will be asserted against the "estate." The "race to the courthouse," imagined horrible, actually does not exist. The "race to the courthouse" rationale for finding insurance proceeds property of the estate sounds good, but has no analytical basis other than an *a priori* conclusion that the proceeds are property of the estate (even then, the problem is one of equality of distribution as opposed to overall claims against the estate and effect upon the non-proceeds estate). The value of the estate is not altered, and as pointed out, the estate still has no legal or equitable right to the proceeds used to pay the creditors with claims subject to insurance coverage. In sum, *Vitek* comes to the conclusion that property is property of the estate by circuitous route. According to *Vitek* it must be property of the estate, because if it were not, the estate would be diminished.[74] As pointed out, this logic makes the *a priori* assumption that it is property of the estate, and makes that assumption based on the effects that the lack of the property within the estate could or would have, not on whether the estate has a legal or equitable interest to, or in, property in the first place.

**74.** This reasoning is much like that espoused by the Ninth Circuit in *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Cos., Ltd.),* 799 F.2d 517, 519 (9th Cir.1986) ("liability policies meet the fundamental test of whether they are 'property of the estate' because the debtor's estate is worth more with them than without them."). The test is not whether the value of the estate would go up. This test is absurd because anything of value, owned by anyone, could conceivably be considered property of a bankrupt's estate merely because it has a value which, if added to the estate, would increase the estate's value (What are the giraffes in the zoo worth, the Court must ask. Enough? Then they must be property of Larry Smith's Chapter 7 bankruptcy estate.). The test under 11 U.S.C. § 541 is whether the debtor has a legal or equitable interest in the property, not whether the value of property would increase the bottom line of the estate. Moreover, an estate may own property not worth anything, or which has a negative value, *e.g.,* environmentally contaminated property. Under the *Minoco* rationale would this property be property of the estate given that the value of the estate would not be increased, and would even be potentially decreased by the environmental contamination? Moreover, the "value contemplated first" concept is anathema to the abandonment right (or duty) established under 11 U.S.C. § 554. The value (worth more or less) analysis is made after the estate is formed, to determine what property should be abandoned from the estate. Of course, *Minoco* is correct, that liability *policies* are property of the estate. But this is so because of the debtor's contractual rights and ownership interests under and in the policies, not because the policies increase the value of the estate.

As noted above, while *Vitek* is critical of *Edgeworth*, it does not directly refute it. Moreover, the decision in *Vitek* rested upon an application of Texas insurance law, and as such, the discussion regarding "property of the estate" was dicta.[75] Further, given the unique nature of the circumstances giving rise to the case, the *Vitek* panel questioned the precedential value of its own opinion.[76]

### 5. Soothing the Fears of the Contra-*Edgeworth* Camp—Why the Circuitous Reasoning to Label Liability Policy Proceeds Property of the Estate is Not Necessary

An analysis of the reasons for the *Vitek* decision, as well as of those cases upon which *Vitek* relied for support, reveals that the overriding concern of most courts who find insurance proceeds must necessarily be property of the estate is that without such a finding the bankruptcy courts would be without power to prevent a free-for-all against the insurers, each claimant hoping to grab its share of insurance proceeds first, to the exclusion of all other similarly situated claimants, if necessary. The bankruptcy courts would thus lack the power to control the adjustment of the debtor-creditor relationship among, and distribution to, certain creditors of the bankruptcy estate, and therefore, all creditors could (conceivably) suffer. The Court offers the following to show that it is not necessary for liability proceeds to be property of the bankruptcy estate for the court to have authority over and in connection with the rights of claimants who have claims against the insurers on account of liability policies.

#### a. The Automatic Stay

According to *Edgeworth*, once the policies are determined to be property of the estate, the automatic stay[77] sufficiently protects the debtor's creditors against the potential inequities of a "race to the courthouse" scenario.[78] While this Court agrees with *Edgeworth* that the automatic stay will, in most cases, prevent the "race to the courthouse," this Court is not completely convinced by the rationale that the automatic stay is affected by a finding that

---

**75.** *Accord, Sfuzzi,* 191 B.R. at 667, n. 8.

**76.** *See, Vitek,* 51 F.3d at 533, n. 3. ("the issues here considered are more frequently encountered in proceedings in Chapter 11 reorganizations than in Chapter 7 liquidations. Consequently, any analogical crossovers into Chapter 11 jurisprudence is problematical, particularly those Chapter 11 proceedings that implicate mass tort litigation ... In the same vein, the precedential—or even merely instructional—value of this opinion to future Chapter 11 cases should probably be 'little or none.' "). The *Vitek* panel also cautioned its readership "against relying on this opinion as precedential or instructive beyond its narrow holding in the context of the particular facts and circumstances of this case ..." *Id.,* at 538, n. 39.

**77.** *See,* 11 U.S.C. § 362(a) provides in pertinent part:

(a) ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate: ...

**78.** *See, Edgeworth,* 993 F.2d at 56, n. 21.

the policies are property of the estate, or that the automatic stay will prevent the "race to the courthouse" scenario in all cases.

The automatic stay prevents: the commencement or continuation of suits or proceedings to "recover a claim against the debtor;" the enforcement of a judgment against the debtor or property of the estate, and; any act to obtain possession or control over property of the estate.[79] In most states outside Louisiana (the Court believes) where a suit to recover insurance funds has not been canceled, or, if commenced, has not been reduced to judgment, the plaintiff, because the debtor must be a named party in the action or must be cast in judgment before an action will lie, will be stayed from commencing or proceeding with a suit that (ultimately) seeks a judgment that can be enforced against the insurance company. Even if the debtor is named only nominally, such suits are stayed under 11 U.S.C. § 362(a)(1) because that provision prevents the continuation or commencement of suit to recover on a claim against the debtor. Such a suit would seek to impose liability against the debtor, and thus, be an attempt to recover a claim against the debtor. Because the debtor necessarily must be a party, the suit is stayed. So, within states where there is a requirement that the debtor/insured be a party to the action, the action, because of the express terminology of § 362(a)(1) and (2) will be stayed by the commencement of the bankruptcy case.

In Louisiana, however, tort victims have a substantive right of action against the insurer of the debtor, and there is no necessity of naming, or attempting to re-cover against, if even nominally, the debtor.[80] 11 U.S.C. § 362(a)(1) does not seem to apply.

Moreover, unless the suit has been reduced to judgment, 11 U.S.C. § 362(a)(2) does not apply. In the direct action context, however, a judgment would have been granted against the insurer. Thus, enforcement of the judgment against the insurer alone would have to be categorized as enforcing a judgment against property of the estate for the enforcement to be stayed. However, the policy's status as property of the estate is some what misleading. As discussed, the debtor's rights and equitable interests under the policy are property of the estate. A tort plaintiff is not suing to enforce the debtor's policy rights, a tort plaintiff wishes to enforce the judgment against the proceeds of that policy, in other words, funds payable by the insurer on account of the insurer's contractual assumption of liability via its insurance policy with the debtor. Such funds are not property of the estate, and thus, 11 U.S.C. § 362(a)(2) would not apply.

The same rationale extends to acts aimed at possession or control of property of the estate under 11 U.S.C. § 362(a)(3). A tort plaintiff is not trying to possess the debtor's policy rights, nor is the tort plaintiff attempting to control the debtor's policy rights. By virtue of its substantive right of action against the insurer, the tort plaintiff is merely seeking to recover that which is not property of the estate.

Thus, the *Edgeworth* notion that the automatic stay would prohibit commencement, prosecution, and/or collection of a claim against a liability insurance is probably correct in the non-direct action states,

---

**79.** 11 U.S.C. § 362(a).

**80.** *See,* La.Rev.Stat. § 22:655; *see also, Anderson v. Ichinose,* 98–2157 (La.9/8/99); 760 So.2d 302, 307 ("The Direct Action Stat-ute affords a victim the right to sue the insurer directly when the liability policy covers a certain risk.").

but would not allay the concerns of *Vitek, et al.,* in direct action states such as Louisiana.

### b. Section 105; The Reorganization Chapter; Jurisdiction Over Claims and Claimants

Even if the automatic stay does not apply to Louisiana direct actions against insurers, a bankruptcy court retains power to marshal and allocate the claims of the creditors. A bankruptcy court has jurisdiction to enjoin insurance claimants from pursuing suits against the proceeds of the policies not because the policies are property of the estate, but because the jurisdiction stems from the suits being "related to" the underlying bankruptcy of the insured and the jurisdiction of the court over claims, claimants, and the debtor.[81]

While the automatic stay in 11 U.S.C. § 362 may not apply to prevent direct actions against insurers of a debtor, a bankruptcy court's power to stay litigation is not constrained by § 362 (or even related to § 362). Under 11 U.S.C. § 105, a bankruptcy court has the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[82] Section 105, in effect, empowers (provides jurisdiction for) the bankruptcy court to enjoin persons from commencing or continuing litigation against parties other than the debtor.

As explained by the Fourth Circuit, "[t]he court [has] ample power to enjoin action excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case."[83] While this Court does not necessarily agree with the entire rationale for prohibiting suits against parties other than the debtor as posited by the *A.H. Robins* Court, the sentence above does, however, illustrate the jurisdictional basis for enjoining suits third party suits against parties other than the debtor.

As the *A.H. Robins* Court noted, jurisdiction to enjoin the action stems from the possibility that allowing the suit to continue might "interfere in the rehabilitative process." Because such a suit could conceivably have an effect on the rights or liabilities of the debtor, and interfere or otherwise affect the administration of the estate, the suit is related to the underlying bankruptcy. Jurisdiction is thus premised upon 28 U.S.C. § 1334(b) rather than 28 U.S.C. § 1334(e). As the United States Supreme Court has made clear, the restructuring of the debtor-creditor relations, if anything is, is at the core of the federal bankruptcy power.[84] Because such a suit has the potential to affect the ability of the bankruptcy court to restructure the debtor-creditor relationship, via either liquidation or reorganization, the bankruptcy court has the power to issue process en-

---

**81.** *See,* 28 U.S.C. § 1334(b).

**82.** 11 U.S.C. § 105(a).

**83.** *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994, 1003 (4th Cir.1986), quoting *Johns–Manville,* 26 B.R. at 425. While this Court agrees with the statement in *A.H. Robins* regarding the bankruptcy courts powers under § 105 of the Bankruptcy Code, this Court does not agree with the determination by the Court in *A.H. Robins* that insurance policies and the proceeds of those policies are the most valuable asset of the estate, and thus, any action to diminish the asset is subject to the stay. As discussed above, a suit against an insurer of a debtor does not seek to diminish property of the estate, because the proceeds of that policy are not property of the estate.

**84.** *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982)

joining prosecution of suits against parties other than the debtor even if the object of the suits is not to recover property of the estate *per se.*

The United States Supreme Court reinforced this notion in *Edwards,*[85] wherein it reversed the Fifth Circuit's determination that a tort judgment plaintiff could execute against the sureties on supersedeas bonds posted by the debtor, in the face of a bankruptcy court injunction prohibiting such actions. In *Edwards,* the plaintiffs had procured a judgment against Celotex Corp. ("Celotex") in a Texas district court, which was subsequently affirmed by the Fifth Circuit. On the day the Fifth Circuit issued its decision affirming the award of damages to the plaintiffs, Celotex filed for bankruptcy. Shortly thereafter, the bankruptcy court in which the Celotex bankruptcy case was pending issued an injunction under 11 U.S.C. § 105 prohibiting judgment creditors like the plaintiffs from proceeding against sureties without the bankruptcy court's permission. The bankruptcy court's reasons for issuing the injunction were that allowing judgment creditors to execute on the supersedeas bonds would allow the sureties to seek relief from the stay to reach Celotex's collateral under the surety agreements, and thereby possibly destroying any chance of a successful reorganization.

The plaintiffs sought to execute on the bonds in the Texas district court. The district court agreed with the plaintiffs and allowed the execution to proceed. The Fifth Circuit, on appeal, affirmed the district court. The Fifth Circuit reasoned that because the appellate process was complete, Celotex no longer had a property interest in the bond, and moreover, the Fifth Circuit took issue with the ability of the bankruptcy court to issue the 11 U.S.C. § 105 injunction in the first place.

The Supreme Court reversed, finding that the injunction, once in place, could only be challenged by appeal from that court. Thus, the Texas district court and the Fifth Circuit were bound by the injunction. However, the Supreme Court went further and examined whether the bankruptcy court had jurisdiction to issue an injunction prohibiting suits against third-parties. While the Court found that a proceeding against the surety on the bond does not directly involve Celotex, the execution on the bonds, nonetheless, was "related to" the Celotex bankruptcy because of the collateral agreements Celotex held with the sureties. Thus, the bankruptcy court had jurisdiction to enjoin the suits against third parties.

*Edwards* envisions a scenario in which a suit against a third party to recover property from that third-party which is not property of the estate may nonetheless fall within the jurisdiction of the bankruptcy court.[86] This jurisdiction, premised upon the relation of the suit to the bankruptcy, provides the jurisdictional foundation upon which a bankruptcy court may enjoin the prosecution of suits directly against insurers. In sum, the bankruptcy court has the power to effectively prevent the "race to the courthouse," and effectively deal with the administrative effects on the estate, not merely because the debtor has some right or interest in the property which is

---

**85.** *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

**86.** *But c.f., Vitek,* 51 F.3d at 536 ("But, if the Homsys' portion of the Proceeds is truly not property of the estate, then the bankruptcy court has no authority to enjoin suits against the Homsys: The bankruptcy court's injunctive powers exist only to ensure the preservation and fair division of Estate assets."). The Court in *Vitek* apparently forgot the Supreme Court's response to these same suggestions made by the Fifth Circuit in *Edwards.*

the ultimate object of the suit, but rather because that suit has the potential to affect the bankruptcy case, and thus, is "related to" the underlying bankruptcy case.[87] When viewed from this perspective, the fears of what may happen if a court holds that insurance proceeds are not property of the estate should dissipate.

Of course, situations involving the intervention of courts into the liability insurance company/tort claimants abound within the Chapter 11 universe. The relationship among the bankruptcy court, the insurance company, the tort claimants, and the debtor emanates from three distinct grounds; the insurance policy is property of the estate; the tort claimants have claims against the estate the Bankruptcy Code and bankruptcy process contain statutory and equitable authority for affecting the rights of all, due to the first and second ground. Therefore, the Bankruptcy Code provides for: channeling injunctions to the hopefully sufficient fund with the liability insurer's contractual obligation; accepting classes denying the rights of dissenting class members, subject to the best interest of creditors test, when the plan calls both for the limitation upon assertable claims and the scope of coverage under liability policies; limited fund settlements incorporated into the context of the Chapter 11 plan; the authority to marshal claims so that upon (a number of variations of) payment of limited policy limits into a central fund (even) within a liquidation case, claims are marshaled pro rata, against the policy limits.

Because the tort claimants have claims, the bankruptcy court has jurisdiction, both over the claims and the claimants. Because the insurance contract is property of the bankruptcy estate, the court has jurisdiction over the parties to the contract, and over disputes arising under the contract. None of these truisims, or the multitude of possible configurations of fact and legal situations that would trigger the necessity and power to act is grounded in any way upon the proceeds of liability insurance policies being property of the estate; the court's authority is not defined by the answer to the question "are liability insurance proceeds property of the estate"? To hinge the description of court authority upon the answer to that question is to provide the answer, in the most result-oriented, groundless fashion—if we need it to be it will be; if we don't, it won't.

Thus, there is power to act, if the power is invoked. If it is invoked (say, through one or more of the mechanisms mentioned above), hopefully it will be used properly. As the Court has said, the Court is ordering remand. Not because of an absence of power, but because there is no suggestion within the facts on this proceeding of intention by any party to invoke the power to interject the court into the aforementioned realm of debtor, insurance company, claimants. What we are faced with is

---

87. C.f., Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 757, 758 (5th Cir.1995). In Zale, the Fifth Circuit determined that certain contract claims, held by third parties, against an insurer of the debtor had an effect on the estate, and that, therefore, the bankruptcy court had jurisdiction to temporarily enjoin such claims. The Fifth Circuit premised jurisdiction **not** on the need to determine that proceeds of the insurance policies issued by the debtor's insurer were property of the debtor's bankruptcy estate, but rather, because it was the effect the dispute would have on the debtor's estate that conferred jurisdiction on the bankruptcy court. Zale, 62 F.3d at 758 ("We need not decide whether the proceeds are property of the estate, if we find that the disputes over the CIGNA policy can have an effect on the estate.") (emphasis in original). As is pointed out by Zale, the question of power to issue an injunction, the question of jurisdiction, is a different one from that of whether the injunction was properly issued.

a group of claims, for which there is plenty of insurance coverage, and some non-insurer Defendants who have (temporarily) joined with the insurers to attempt to drag the Plaintiffs to Texas federal court for no reason, except that the debtor owns the insurance policies. That reason is insufficient.

### 6. What About Section 541(a)(6)?

The same logic finding proceeds of liability insurance is not property of the estate under 11 U.S.C. § 541(a)(1) holds true for any argument set forth under 11 U.S.C. § 541(a)(6). Recall, § 541(a)(6) provides that "proceeds ... of or from property of the estate" are property of the estate. It would seem then that if the insurance policy is property of the estate, then proceeds paid from that policy are also property of the estate under 11 U.S.C. § 541(a)(6). However, merely because the nomenclature "proceeds" is used to describe payments made on insurance policies does not necessarily mean that it is the same as the term "proceeds" as used in 11 U.S.C. § 541(a)(6).

In construing whether insurance proceeds fall within the purview of 11 U.S.C. § 541(a)(6), many courts have resorted to certain legislative statements accompanying the enactment of the provision.[88] For example, the Senate and House Reports pertinent to the statute state that the term "proceeds" "is intended to be a broad term to encompass all proceeds of property of the estate."[89] While the term proceeds is intended to be broad, the legislative statements also contain the revealing statement

that "[t]he conversion in form of property of the estate does not change its character as property of the estate."[90] This statement is particularly revealing when viewed in light of another statement by the drafters regarding the scope of 11 U.S.C. § 541—that § 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case."[91]

By viewing the term "proceeds" in light of these legislative statements, as well as in the context of the statute itself, it becomes clear that "proceeds" in § 541 refers to a revenue stream flowing from property of the estate being converted from one form to another, such as the sale of a piece of real or immovable property. By including the term "proceeds" in 11 U.S.C. § 541(a)(6), the statute maintains the value of the estate to the extent that property which is property of the estate is converted to some other form. The statute prevents static adherence to the form of property as it existed at the time the estate was created or that it came into the estate as the signification of whether property is or is not property of the estate, *i.e.,* if property came into the estate as real property, it must retain its character as real property to continue within the possession of the estate.

On the other hand, "proceeds," as used in 11 U.S.C. § 541(a)(6) is not meant to increase or expand the debtor's rights in and to property. As stated previously, by paying a premium for insurance,

---

88. *See, e.g., Bradt v. Woodlawn Auto Workers, F.C.U.,* 757 F.2d 512, 515 (2nd Cir.1985); *American Bankers Ins. Co. v. Maness,* 101 F.3d 358, 363–364 (4th Cir.1996).

89. S.Rep. No. 989, 95th Cong., 2d Sess. 83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5869; H.R.Rep. No. 595, 95th Cong., 1st

Sess. 368 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6324.

90. *Id. (emphasis added).*

91. S.Rep. No. 989 at 82, 1978 U.S.C.C.A.N. at 5868: H.R.Rep. No. 595 at 367, 1978 U.S.C.C.A.N. at 6323.

the insured owns a policy, but does not thereby obtain any legal or equitable interest in the proceeds or funds to be used to pay any claims covered under the policy. When an insurer pays a claim covered under the policy, the policy is not converted in substance or form from incorporeal contractual rights to money. The policy remains intact. The true property of the estate is not converted to proceeds. The money paid under the liability policy is the money of the insurance company. The contractual rights are not affected, unless they are affected because of the contractual rights. Because the insurers' assets are used to pay the claims, the proceeds should not be seen as a component asset of the underlying asset. The debtor/insured's balance sheet or income statement is not affected, except that liabilities are paid with funds of a third party, and do not then form liabilities of the insured. Thus, 11 U.S.C. § 541(a)(6) does not apply to moneys paid by a liability insurer on account of a claim covered by a liability insurance policy issued to a debtor.

To bring the discussion back to the instant matter, NEG and its bankruptcy estate have no legal or equitable interests in the actual funds which would be used by the Insurers to pay the Plaintiffs' claims if they are successful. Thus, the proceeds are not property of the estate. As such, in the event that plaintiffs are successful in their suit against the Insurers, the exclusivity of bankruptcy jurisdiction under 28 U.S.C. § 1334(e) does not necessitate approval for disbursal from the Bankruptcy Court for the Northern District of Texas.[92] There are no facts and there have been no suggestions that exercise of bankruptcy authority is necessary because of the rela-

tionship of claimants, debtor, insurance policy, and reorganization, rehabilitation, or distribution concerns.

## 7. The Federal Analysis of State Law Property Interests

After reviewing the jurisprudence, this Court finds *Edgeworth* the better reasoned opinion on the matter. There is no statutory basis for concluding that the proceeds of liability insurance policies are property of the estate. Given the expanse of statutory and equitable authority to marshal claims and restructure rights of creditors in, to, and upon the proceeds of liability insurance policies, the Court can find no equitable need (even if such would form the basis for the Court making up a law (which it wouldn't) to consider liability policy proceeds property of the estate). In *Butner v. United States*,[93] the United States Supreme Court stated:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.[94]

The *Edgeworth* rationale agrees with the *Butner* view of property. Under state law, what interests does the debtor have in the proceeds of liability insurance? The answer, as the *Edgeworth* Court concludes, is none. In Louisiana, given the substantive right of direct action against the insurer, the answer is none, emphatically, none.

Certainly, the analysis of whether property is property of the estate is a federal analysis because "property of

---

**92.** *Accord, Sfuzzi, supra.*

**93.** 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

**94.** *Id.,* 440 U.S. at 55, 99 S.Ct. at 918; *accord, Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000).

the estate" is defined and circumscribed by federal law.[95] As *Butner* makes clear, however, unless some overriding federal interest dictates otherwise, the rights accorded property under state law are not to be analyzed differently merely because of the interposition of a bankruptcy. Under state law, the debtor has no interests in the funds used by an insurance company to pay its own obligations which are separate and independent of the obligation owed by the debtor to pay that same debt.[96] Therefore, the proceeds of liability insurance payable to non-debtor parties are not property of the debtor's estate under 11 U.S.C. § 541, or any other provision of the Code.

## III. REMAND

Having found subject matter jurisdiction under 28 U.S.C. § 1334(b) sufficient to support removal, the Court now turns to the Motion to Remand set forth by Plaintiffs. While 28 U.S.C. § 1452(a) provides for removal of state court proceedings to federal court if bankruptcy jurisdiction is present, 28 U.S.C. § 1452(b) provides the mechanism by which the court to which the action is removed may remand the matter back to the state court.

 28 U.S.C. § 1452(b) states, "The court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground*."[97] "Equitable," as the term is used in 28 U.S.C. § 1452(b), has been defined as simply "appropriate."[98] Therefore, this Court is empowered by 28 U.S.C. § 1452 to remand this matter to the State Court if it finds that remand is appropriate under the circumstances.

 Appropriateness, in turn, is governed by a variety of considerations. Among these include;

1) the effect or lack thereof on the efficient administration of the estate if the matter is remanded;

2) the extent to which state law issues predominate over bankruptcy issues;

3) the difficulty or unsettled nature of the applicable state law;

4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7) the substance rather than form of an asserted "core" proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden upon the court's docket;

**95.** *See, Page v. Edmunds*, 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318 (1903).

**96.** *Accord, Willis v. Celotex Corp.*, 978 F.2d 146, 148 (4th Cir.1992) ("The terms of the supersedeas bond impose a duty on Aetna separate and independent of Celotex's duty to pay the judgments."); *see also, Edwards v. Armstrong World Indus., Inc.*, 6 F.3d 312, 317 (5th Cir.1993), rev'd on other grounds *sub nom, Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995) ("The obligations of a surety are sufficiently independent to provide the basis of an action by the judgment creditor to collect on the bond unfettered by the automatic stay provisions of the Bankruptcy Code.").

**97.** (Emphasis added).

**98.** *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223, 1226 (7th Cir.1991); *see also, United States Brass Corp.*, 110 F.3d at 1265; *Petrarcha*, 516 U.S. at 133, 116 S.Ct. at 499 (Ginsberg, J., concurring) (" 'equitable' signals that which is reasonable, fair, or appropriate.").

10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial; and

12) the presence in the proceeding of non-debtor parties.[99]

This list is non-exhaustive. The statute permits a court to remand "on any equitable ground," whether listed or not.[100] Moreover, the list does not denote the need for a formulaic balancing of the equities. The presence of "any equitable ground" is a sufficient basis for remand.

■■■■ A quick review of the list, however, reveals that several strongly favor remand, while none support retention of jurisdiction. First, remand of the State Court action will have a negligible effect, if any, on the administration of the NEG bankruptcy estate. Maintenance of the suit in State Court against parties other than the debtor will not interfere with NEG's rights under the Bankruptcy Code,[101] nor will it prevent NEG from formulating a plan, seeking acceptance of the plan, or implementing a plan.[102] The suit does not challenge, but rather assumes the property interest of the debtor in the policy(ies).

Second, the State Court suit is entirely grounded in and upon state law. The cause of action does not arise under, and is not governed by, the Bankruptcy Code or any other federal law. The right of action prosecuted by the Plaintiffs arises solely under Louisiana law. The relation of the State Court suit to the NEG bankruptcy, and bankruptcy law in general, is so tenuously related that it can only be said that state law issues plainly predominate over any bankruptcy issues. Thus, the expertise of the bankruptcy courts is not needed to resolve this dispute.

Moreover, the suit, as discussed above, does not involve the disposition of property of the estate. Certainly, if the Insurers are liable to the Plaintiffs, they are liable because they chose to insure a risk that the debtor would incur liability and thereby issued a policy. While the policies, *i.e.*, the debtor's contractual and statutory rights against the insurance company, are property of the estate, the funds used to pay the Insurers liability to the Plaintiffs are not. If Plaintiffs are successful, the recovery against the Insurers may have a positive effect on the value of other creditors' claims against the estate—the payout from the estate on those claims can only potentially increase, because insurance proceeds will pay the claim of the Plaintiffs here. But such a recovery affects the *res* of the *estate* not at all. The only possible effect on the NEG estate is the remote, tangential effect that recovery by the Plaintiffs against the Insurers will have on the value of the estate vis-a-vis creditors with priority equal (or lower) to that of the Plaintiffs in the NEG bankruptcy; that effect can only be positive.

Furthermore, there is no independent basis for federal jurisdiction other than under 28 U.S.C. § 1334(b). No question of

---

**99.** *See, Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487 (E.D.La.1990) discussing considerations regarding both remand under 28 U.S.C. § 1452(b) and discretionary abstention under 28 U.S.C. § 1334(c)(1).

**100.** *See,* 28 U.S.C. 1452(b) ("The court ... may remand ... *on any equitable ground.*") (emphasis added); *see also, Browning v. Na-varro,* 743 F.2d 1069, 1076, n. 21 (5th Cir. 1984) ("a bankruptcy court has broad discretion to grant or deny a motion to remand a removed claim *on any equitable ground ...*") (emphasis added)0.

**101.** *See,* 11 U.S.C. § 1107.

**102.** *See,* 11 U.S.C. §§ 1121–1146.

federal law has been raised or sued upon, and diversity, admiralty, or any other independent basis for federal jurisdiction is equally lacking.[103] Additionally, the suit does not involve the Debtor *per se*, but rather the Debtor's insurers and other Defendants. In fact, the Debtor is not even a party to this lawsuit.[104]

All of these considerations, individually or collectively, are sufficient for this Court to conclude that an equitable ground exists for remand, and therefore, that remand is appropriate. However, the Court finds even further compelling grounds exist warranting remand of this matter to the State Court.

First, the State of Louisiana, through the LDOTD, is a party to this lawsuit. Under the system of federalism, courts have long recognized that States are to be accorded immunity from suit in federal court by private citizens against their will.[105] Such immunity is generally described as "Eleventh Amendment immunity."[106] However, the term "Eleventh Amendment immunity" has been described by the United States Supreme Court as:

convenient shorthand [and] something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... [107]

The State of Louisiana is a sovereign entity immune from suit in a federal court. However, sovereign immunity extends beyond only those suits to which the state is named as a defendant.[108] Sovereign immunity bars any suit in which a State is the "real, substantial party in interest."[109] Accordingly, many state agencies are immunized from suit as suit against the agency is, in effect, a suit against the State itself.

The LDOTD is an agency of the State of Louisiana and the State of Louisiana is the real party in interest to the suit.[110] Thus,

103. *See*, 28 U.S.C. § 1330, *et seq.*

104. *C.f.*, *National Union Fire Ins. Co. v. Titan Energy, Inc.* (*In re Titan Energy*), 837 F.2d 325 (8th Cir.1988) (abstention warranted where, *inter alia*, debtor was not a party to lawsuit brought against debtor's insurers under Louisiana Direct Action Statute.)

105. *See*, *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (noting each state is a sovereign entity in the federal system, and that sovereignty dictates that a state not be amenable to suit without its consent.); *see also, Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 2247, 144 L.Ed.2d 636 (1999); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

106. Amendment XI to the United States Constitution provides:
The Judicial power of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State.

107. *Alden*, 527 U.S. at 713, 119 S.Ct. at 2246–2247.

108. *Earles v. State Bd. of Certified Public Accountants*, 139 F.3d 1033, 1036 (5th Cir. 1998).

109. *See*, *id.*, quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

110. *See*, *Fireman's Fund Ins. Co. v. Department of Transp. & Dev.*, 792 F.2d 1373 (5th Cir.1986) ("We hold that the Department of Transportation and Development of the State of Louisiana is entitled to claim immunity under the Eleventh Amendment from suit by private citizens in federal court."); *see also,*

LDOTD is immunized from suit in a federal forum by private parties.[111] This immunity applies even though the suit was originally commenced in a the State Court but brought to the federal tribunal through the removal process.[112]

In this case, the LDOTD has not affirmatively asserted the defense of sovereign immunity. Neither, however, has the LDOTD consented to jurisdiction or to the removal through waiver.[113] The defense is potent should the LDOTD seek at any time to raise it. While it is true that sovereign immunity is an affirmative defense which must be raised by the State or its agency,[114] the presence of the LDOTD in the suit augments this Court's determination that remand is appropriate. For if the LDOTD does raise the defense, the claims against the LDOTD necessarily would need to be remanded.

Even if the presence of a sovereignly immune party does not defeat jurisdiction over those claims otherwise properly removable,[115] the remand of the Plaintiffs claims against the LDOTD would create a bifurcation in the litigation, forcing the Plaintiffs to try essentially the same case in two different forums. Such a situation would thus create the risk of inconsistent judgments, and would involve a duplication of judicial resources and efforts. Although the possibility that the LDOTD might raise "sovereign immunity" at some point during this litigation is, at this time, speculative, the possibility that this matter will have to be bifurcated if this Court retains jurisdiction, with remand of some parties and retention of others, is very real.

As set forth above, bankruptcy jurisdiction is proscribed by 28 U.S.C. § 1334, and allows a bankruptcy court to entertain only those matters "under" or "arising under" title 11, and those matters which "arise in" or which are "related to" cases under title

---

*Department of Transp. & Dev. v. PNL Asset Management Co., LLC (In re Fernandez)*, 123 F.3d 241, on reh'g, 130 F.3d 1138 (5th Cir. 1997)

**111.** The LDOTD's sovereign immunity would apply even if the suit arose or was governed by the statutory provisions of the Bankruptcy Code. Although 11 U.S.C. § 106(a) purports to abrogate sovereign immunity in actions under or governed by certain specific Bankruptcy Code provisions, the Fifth Circuit has held, *post-Seminole Tribe*, that 11 U.S.C. § 106(a) is unconstitutional. *See, Fernandez, supra.*, n. 103; *accord, Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1119–1120 (9th Cir.2000); *Sacred Heart Hosp. v. Pennsylvania (In re Sacred Heart Hosp.)*, 133 F.3d 237, 245 (3rd Cir.1998); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140, 1147 (4th Cir.1997); *but see, Wyoming Dept. of Transp. v. Straight (In re Straight)*, 209 B.R. 540 (D.Wyo.1997); *Arnold v. Sallie Mae Serv. Corp. (In re Arnold)*, 255 B.R. 845 (Bankr. W.D.Tenn.2000); *Willis v. Oklahoma (In re Willis)*, 230 B.R. 619 (Bankr.D.Okla.1999); *Bliemeister v. Industrial Comm'n (In re Bliem-*

*eister)*, 251 B.R. 383 (Bankr.D.Ariz.2000); *Lees v. Tennessee Student Assistance Corp. (In re Lees)*, 252 B.R. 441 (Bankr.W.D.Tenn. 2000), holding that 11 U.S.C. § 106(a) is a constitutional abrogation of sovereign immunity.

**112.** *C.f., Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

**113.** *See, Magnolia Venture Capital Corp. v. Prudential Sec., Inc.*, 151 F.3d 439, 443–444 (5th Cir.1998) ("The Supreme Court has made it clear that we may find a waiver of a state's Eleventh Amendment immunity in only the most exacting circumstances. '[T]he State's consent [to suit in federal court must] be unequivocally expressed.' ").

**114.** *See, Schacht*, 524 U.S. at 389, 118 S.Ct. at 2053 ("Unless the State raises [sovereign immunity], a court can ignore it."); *see also, Patsy v. Board of Regents*, 457 U.S. 496, 515, n. 19, 102 S.Ct. 2557, 2567, n. 19, 73 L.Ed.2d 172 (1982).

**115.** *See, Schacht, supra.*

11. As this Court has determined, the instant matter is "related to" the NEG bankruptcy because the payment by the Insurers to Plaintiffs has the correlative effect of reducing NEG's liability for those same damages, thus increasing the potential payout among the remaining creditors with status in the NEG bankruptcy equal to the Plaintiffs.

While the Plaintiffs' claims against the Insurers assert a basis for this Court's jurisdiction, they do not undercut the propriety of remand. Plaintiffs' claims against the Defendants other than the Insurers, however, do not affect NEG or its estate, except as regards the conceptual possibility of a contribution claim which is purely speculative given, of course, the existence of the insurance coverage.[116] As such, no basis for defeating remand exists under 28 U.S.C. § 1452.

The fact that judicial resources will be, in large part, duplicated, and the possibility of inconsistent judgments, weighs heavily in favor of remanding the Plaintiffs claims against the Insurers as well.[117]

## IV. CONCLUSION

The remoteness of the asserted basis for jurisdiction, the other equitable grounds outlined above, our determination that the proceeds of liability policies are not property of the bankruptcy estate of NEG, and the possibility of a limitation of federal court jurisdiction upon an assertion of the defense of sovereign immunity, convince this Court that remand of the entire matter is appropriate. For these reasons, Plaintiffs Motion to Remand is **GRANTED**. Because this Court grants Plaintiffs' Motion to Remand, the Defendants' Motion to Transfer is **MOOT**. A separate Order shall issue.

**116.** To ward off the speculative nature of the contribution claim, the Defendants would have to forego proceeding against an insurer in favor of proceeding against a Chapter 11 debtor. The Court does not think the Defendants will so choose. Although some Defendants claim that Plaintiffs' suit affects their rights of contribution/indemnity, the Court has already disposed of this argument for jurisdiction. *See*, n. 38.

**117.** The Court notes that the Plaintiffs are also entitled to a jury trial on their claims, as the suit is legal in nature and Plaintiffs have not filed a claim within the NEG bankruptcy. *See*, U.S. Const., Amend. VII; *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26; *accord, In re Clay*, 35 F.3d 190 (5th Cir.1994); *Carter v. Schott (In re Carter Paper, Inc.)*, 220 B.R. 276 (Bankr.M.D.La. 1998). Indeed, Plaintiffs have asserted such a right and, at oral argument, expressly voiced opposition to trying the case to a jury empaneled by the bankruptcy court. While certain courts use the right to a jury trial as an equitable ground upon which remand can be premised, this Court notes the right to a jury trial, but does not hinge its decision to remand on that determination. The right to a jury trial, certainly, is one of the most preeminent rights accorded by the Constitution, but a bankruptcy court may "preside over a jury trial only with the approval of the district court and the consent of all parties." *Carter Paper*, 220 B.R. at 280; *see also*, 28 U.S.C. § 157(e). However, lack of either requisite does not necessitate remand to a state court. The defect can be cured by withdrawal of the reference to the bankruptcy court by the district court, which may then try the case by jury. *See, Clay, supra.*